(Rev. 5/05)

ORIGINAL

**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

(1) GREGORY DENSTON    00168692
(Name of Plaintiff)          (Inmate Number)

DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD   SMYRNA, DELAWARE   19977

(Complete Address with zip code)

0 5 - 4 9 2

(2)_____
(Name of Plaintiff)          (Inmate Number)

_____
(Case Number)
( to be assigned by U.S. District Court)

_____
(Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1) WILLIAM L. CHAPMAN

(2) PATRICIA TATE STEWART

(3) JULIE LORRAINE FAULCONER
(Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

**CIVIL COMPLAINT**

• • Jury Trial Requested

**FILED**

JUL 14 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

I.   **PREVIOUS LAWSUITS**

A.   If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
including year, as well as the name of the judicial officer to whom it was assigned:

U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE, CASE

N.O. 04-241-GMS, 2004.

U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE, CASE

N.O. 04-1232-GMS, 2004.

_____

_____

VS.

( 4 ) LORREN RILEY FAULCONER

( 5 ) JOS. SCOTT SHANNON

( 6 ) QUINNIN WATSON

( 7 ) JOHN" DOE,S  ONE, TWO, THREE

( 8 ) VINCENT J. POPPITI

II.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution? **X** • Yes   • • No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims? **X** • Yes   • • No

C.    If your answer to "B" is <u>Yes</u>:

   1. What steps did you take? APPEALED THE DECISION OF FAMILY COURT

   TO THE SUPREME COURT OF DELAWARE.

   2. What was the result? APPEAL DENIED


D.    If your answer to "B" is <u>No</u>, explain why not: _____ N/A _____


III.    **DEFENDANTS** (in order listed on the caption)

   (1) Name of first defendant: WILLIAM L. CHAPMAN , JR.

   Employed as __JUDGE__ at __FAMILY  COURT__

   Mailing address with zip code: FAMILY COURT, NEW CASTLE COUNTY COURT HOUSE

   500 NORTH KING STREET, WILMINGTON, DELAWARE  19801
   DEFENDANT IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY

   (2) Name of second defendant: PATRICIA  TATE  STEWART

   Employed as __MASTER__ at __FAMILY COURT__

   Mailing address with zip code: FAMILY COURT, NEW CASTLE COUNTY COURT HOUSE

   500 NORTH KING STREET, WILMINGTON, DELAWARE 19801

   DEFENDANT IS BEING SUED IN HER INDIVIDUAL AND OFFICIAL CAPACITY.
   (3) Name of third defendant: JULIE LORRAINE FAULCONER

   Employed as COMPUTER PROGRAMMER at HYETT  PACKER

   Mailing address with zip code: 14915 JOHNS LAKE ROAD,

   CLERMONT, FLORIDA  34711

   (List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)
   DEFENDANT IS BEING SUED IN HER INDIVIDUAL CAPACITY.

DEFENDANTS

4. LORREN RILEY FAULCONER

   EMPLOYED AS  HOME IMPROVEMENT WORKER  AT FROM HOME RESIDENT

   14915 JOHNS LAKE ROAD, CLERMONT, FLORIDA 34711
   DEFENDANT IS BEING SUED IN HIS INDIVIDUAL CAPACITY.

5. JOS. SCOTT SHANNON

   EMPLOYED AS LAWYER   AT FIRST FEDERAL PLAZA, 704 NORTH KING
   STREET, SUIT 500  P.O. BOX 1031, WILMINGTON, DELAWARE 19899
   DEFENDANT IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITY.

6. QUINNIN WATSON

   EMPLOYED AS DETECTIVE AT NEW CASTLE COUNTY POLICE DEPARTMENT
   3601 NORTH DuPONT HIGHWAY, NEW CASTLE DELAWARE 19720
   DEFENDANT IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY.

7. JOHN DOE"S ONE, TWO, AND, THREE

   EMPLOYED AS POLICE OFFICERS  AT NEW CASTLE COUNTY POLICE DEPARTMENT
   3601 NORTH DuPONT HIGHWAY, NEW CASTLE DELAWARE 19720
   DEFENDANT"S ARE BEING SUED IN THERE INDIVIDUAL AND OFFICAL CAPACITY.

8. VINCENT J. POPPITI

   EMPLOYED AS FAMILY COURT CHIEF JUDGE AT FAMILY COURT
   NEW CASTLE COUNTY COURT HOUSE WILMINGTON, DELAWARE 19801
   DEFENDANT IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY.

9. AT ALL TIMES RELEVANT TO THE EVENTS DESCRIBED HERE IN, ALL

   DEFENDANTS HAVE ACTED UNDER COLOR OF STATE LAW.

## PRELIMINARY STATEMENT

THIS IS A CIVIL RIGHTS ACTION FILED BY PLAINTIFF GREGORY DENSTON
A STATE PRISONER FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF
UNDER 42 U.S.C. & 1983 ALLEGING A VIOLATION OF STATE AND FEDERAL
LAW OF PLAINTIFF"S PARENTAL RIGHTS TO THE CARE, CUSTODY, AND
MANAGMENT OF HIS CHILD.

THE PROCEEDING WHICH LEAD TO A TERMINATION OF PLAINTIFF"S
PARENTAL RIGHTS WAS IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER
THE FOURTEENTH AMENDMENT TO BOTH STATE AND FEDERAL CONSTITUTION.

## JURISDICTION

1. THE COURT HAS JURISDICTION OVER PLAINTIFF"S CLAIMS FOR VIOLATION
   OF FEDERAL CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. & 1331.

2. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF"S
   STATE LAW TORT CLAIMS UNDER 28 U.S.C. & 1367.

### Statement Of Facts

1. On or about November 29, 1997, plaintiff was arrested for abusing his wife Amy Denston (Referred to hereafter as Amy).

2. Plaintiff and Amy are the biological parents of their son K.D. K.D. was born on January 9, 1995, see Exhibit __A_____.

3. On November 29, 1997, the same evening of the alleged incident abuse plaintiff took K.D. to his grandmother's house in Claymont Delaware 5 minutes from plaintiff's home.

4. Upon arrival at plaintiff's mother's house, plaintiff called 911 that his wife needed help and send an ambulance to plaintiff's home.

5. Plaintiff then left his mother's house, leaving K.D. with his grand-mother. That same evening plaintiff returned to his mother's house to find the police there.

6. The police, from the New Castle County Police Department took plaintiff into custody. Plaintinff explained to the police that his son K.D. was in the care of his grandmother. The police officers, John Doe's one two, and three left K.D. in the custody of plaintiff's mother.

7. Plaintiff was taken by the police to the New Castle County Police station. There plaintiff was questioned by detective Quinnin Watson and placed under arrest. During questioning plaintiff told detective Quinnin Watson that K.D. was with his mother.

8. After plaintiff's arrest on November 29, 19977, plaintiff was taken to Ganderhill Prison in Wilmington, Delaware.

9. On December 5, 1997, Julie Faulconer, (K.D.'s aunt), (Referred to hereafter as Julie) had filed a petition in the Family Court in New Castle County Delaware, alleging that K.D. was dependent. or neglected. See Exhibit___B_____. (Ex-parte Order)

10. Judge William L. Chapman, Jr., issued the Ex-Parte order dated, December 5, 1997 giving Julie temporary custody of K.D. Thereby taking custody away from plaintiff's mother.

11. On December 12, 1997, a probable cause hearing on the custody matter of K.D. was held in the Family Court. Plaintiff was taken from Ganderhill Prison to appear at the hearing. See Exhibit_C___. (Probable cause order).

12.  At the probable cause hearing, Patricia Tate Stewart, Master of
     the Family Court made no effort to prevent or eliminate the re-
     moval of K.D. from his grandmother's home. PLaintiff's mother was
     never part of the hearing (e.g., she was not at the court house,
     or called to testify). Detective Quinnin Watson Watson was at the
     hearing, but was not called to testify. K.D. was removed without
     plaintiff's consent.

13.  At the time of both the post-deprivation and probable cause hearings,
     plaintiff waw without counsel to defend against the evidence present-
     ed allegedly showing K.D. to be in imminent danger of serious phy-
     sical or emotional injury while in the custody of his grandmother.

14.  During these hearings and Julie being a resident of Florida, Julie
     was staying temporaraly with her sister Ruth and her husband George
     Ludwig in Claymont Delaware.

15.  Julie was being represented by Jos. Scott Shannon, defendant in this
     case.

16.  By order of the probable cause hearing, an adjudicatory hearing was
     set for January 9, 1998.

17.  After the probable cause hearing, Plaintiff learned from his mother
     that K.D. had been staying with Ruth while she was at work. Plaint-
     iff's mother told him K.D. was o.k. and in good health.

18.  At the adjudicatory hearing on January 9, 1998, arrangements for K.D.
     to be placed with Julie and her husband Lorren Riley Faulconer at
     their home in Clermont, Florida. See Exhibit_D_____. (Master's
     order dated January 20, 1998).

19.  Plaintiff contested these matters with no prevail. Plaintiff was
     without counsel and gave the court notice that he could not afford
     an attorney at and during these proceedings to have K.D. taken from
     custody of his grandmother, that there was no proof at the probable
     cause hearing that K.D. was in imminent danger.

20.  It was plaintiff's understanding through the adjudicatory hearing
     that K.D. would soon be returned to the custody of his mother Amy,
     to Delaware, once she was capable of taking care of her son.

21.  At the time of these hearings, K.D. was around the age of three years
     old.

22. On or about September 29, 1998, plaintiff pled guilty on charges of abusing K.D.'s mother.

23. Before September 29, 1998, plaintiff and his wife Amy got Divorced.

24. Plaintiff later learned that Amy was living in Florida with a friend, and was not far from the Faulconer's home where K.D. lived.

25. Plaintiff wrote to K.D. and to the Faulconer's, but never got any response. Plaintiff explained the need to see his son and that he missed him.

26. On or about the month of April 2002, plaintiff filed a petition for visitation in the Family Court, New Castle County Delaware seeking visitation with K.D.

27. Plaintiff did receive a response by Julie's lawyer, Jos. Scott Shannon to the petition on May 8, 2002.

28. Plaintiff received no hearing on the matter of visitation with his son K.D. from the Family Court.

29. On January 14, 2003, plaintiff received notice that his parental rights were being termitted. See Exhibit E____. In accordance to the notice plaintiff had 20 days to file an answer.

30. On or about January 28, 2003, plaintiff filed in the Family Court of Delaware a motion for appointment of counsel. Motion was denied by judge William L. Chapman, Jr. around March 2003.

31. On April 12, 2002, Amy consented to terminate her parental rights to her son K.D. See Exhabit F____. (Affidavit to consent).

32. Julie and her husband Loren Riley Faulconer filed in the Family Court of Delaware on May 8, 2002 a petition for adoption/termination of parental rights (adoption/TPR).

33. A hearing was scheduled on April 21, 2003 on the petition for adoption of K.D. and the termination of plaintiff's and Amy's parental rights to their son K.D.

34. Vincent Poppiti, judge of the Family Court ordered a social report and study done by Childrens Home Society of Florida, before the hearing on the petition for adoption/TPR. See Exhibit G____, also, See Exhibit H____ (Social Report).

35. On or about April 8, 2003, Julie petitioned the Family Court to excuse K.D. from the adoption/TPR hearings.

36.  Plaintiff responded with a motion requesting that the court allow
     K.D.'s PRESENTS during the adoption/TPR hearing. That motion was
     denied by The Family Court.

37.  Julie's motion to excuse K.D. from the adoption/TPR proceedings was
     granted. See Exhibit___I___. (Order of TPR. pg.1)

38.  Sometime during the proceedings, Julie made requests to the Family
     Court to have K.D.'s paternal name changed.

39.  On April April 21, 2003, the day of the hearing on the petition for
     adoption/TPR, plaintiff was brought to the Family Court and seeing
     plaintiff was still incarcerated and was not able to afford a law-
     yer, plaintiff appeared before the court without a lawyer since the
     court opposed his earlier motion for counsel. The court never
     appointed plaintiff counsel at the hearing.

40.  On May 5, 2003, Julie and Loren Riley Faulconer's petition for ter-
     mination of plaintiff's and Amy's parental rights was granted.
     Plaintiff's parental rights were transferred to the Faulconer's for
     the purpose of adopting K.D. See Exhibit___I___.(Termination
     order).

41. It is plaintiff's belief that K.D. continues to live with the Faul-
     coners in Clermont, Florida.

42.  It is plaintiff's belief that Amy is remarried, living in Florida
     and is still seeking K.D.

## Statement Of Claims

1. Defendants William L. Chapman Jr., Vincent Poppiti, Patricia T. Stewart, Julie L. Faulconer, Loren R. Faulconer, and Jos. Scott Shannon violated plaintiff's substantive and procedural due process rights to the care, custody and management of his child and his right to family integrity. Defendants has deprived and continues to deprive plaintiff his parental rights under due process clause of the fourteenth amendment to the United States Constitution.

2. Defendants William L. Chapman, Patricia T. Stewart, Quinnin Watson, John Does, one, two, and three, failed to make a report, having known that K.D. was in imminent danger of abuse or neglect to the appropriate authorities in accordance to the Child Abuse Prevention Act of 1997, (16 Del. C. Chapter 9). Failure to act violated plaintiff rights to procedural due process of law under the fourteenth amendment to the United States Constitution.

3. Defendants William L. Chapman Jr., Julie L. Faulconer, Loren R. Faulconer, violated the child's best interest by allowing his paternal surname to be changed, and by having it changed violated the child's and father's protected liberty interest to due process of the law under the fourteenth amendment to the United States Constitution.

4. Defendants William L. Chapman Jr., Vincent Poppiti, Patricia T. Stewart and Jos. Scott Shannon violated state law and procedural by allowing K.D. to be taken from the State Of Delaware and placing him in the custody, care and managment of Julie and Loren Faulconer, who are not residents of the state of Delaware, and by allowing an agency not licensed by the Department of Services For Children, youth and their families to take part in the proceedings of adoption/Termination of parental rights. (13 Del. C. Section 903, 1101, 1107(f)). Their action denied plaintiff his rights to due process of the law under the fourteenth amendment to the United States Constitution.

5.  Defendants William L. Chapman Jr., and Patricia T. Stewart abused
    their discretion by not appointing plaintiff an attorney throughout
    the proceedings to the care, custody and management of his child in
    violation of plaintiff's fourteenth amendment, and plaintiff's
    sixth amendment right to counsel under the state of Delaware and the
    United States Constitutions.

6.  Plaintiff states that the actions of defendant's in this case did
    willfully, knowingly, recklessly, or negligently caused pain and
    suffering to plaintiff with the loss of his parental rights and
    humiliation by defendants failing to follow substantive and procedual
    due process to family association.

Wherefore, plaintiff request that the court grant the following relief:

A. Issue a declaratory judgement stating that:

1. The termination of plaintiff's rights by defendants William L. Chapman, and Patricia T. Stewart violated plaintiff's substantive and procedural due process under the fourteenth amendment to the United States Constitution to the care, custody, and managment of his child.

2. Defendants William L. Chapman, Patricia Stewart, failed to act to stop the actions by Julie and Loren Faulconer to the control and custody of K.D. in violation of plaintiff's parental rights to family association under the fourteenth amendment to the United States Constitution, when there has been no immienent danger of a child.

3. Defendants Julie and Loren Faulconer violated plaintiff's parental rights to the care, custody and managment of plaintiff's son K.D. under the fourteenth amendment to the United States Constitution by initiating false reports of abuse and neglect, giving false testimony about plaintiff's wife in order to take custody away from plaintiff and his (K.D.'s) grandmother.

4. Defendant Jos Scott Shannon be discipled for falsifing documents and testimonies in order for Julie and Loren Faulconer to gain custody of K.D. violates plaintiff's protected liberty interest under the fourteeth amendment to The United States Constitution who initiated procedures which enabled plaintiff to associate with his son.

5. Defendants Quinnin Watson, John Doe's One, two and three violated plaintiff's parental rights to family association and state law and policy when knowingly failed to act on behalf of K.D. when he was allegedly placed in imminent danger in violation of plaintff's due process under the fourteenth amendment to the United States Constitution.

6.  Defendants in this case deprived and continues to deprive K.D.'s
    right to family association by changing the minor's name in violation
    of his protected liberty interests under the fourteenth amendment
    to the United States Constitution.

B.  Issue an injuction ordering defendants, William Chapman, Patrica T.
    Stewart, Julie and Loren Faulconer and Jos Scott Shannon to:

    1.  Immediately arrange for K.D. to be placed back with his relatives
        in the state of Delaware, and to be provided with services by an
        agency licensed in this state to provide for his well being and
        safety.

    2.  Restore plaintiff's parental rights and that services from an
        licensed agency of this state provide reunification services so
        that plaintiff will be able to see his son.

    3.  Restore K.D.'s name back to his paternal surname.

C.  Award Compensatory damages in the following amounts:

    1.  $ 60,000    dollars, jointly and severally against defendants Julie
        L. Faulconer, Loren R. Faulconer, and Jos Scott Shannon for mental
        and emotional injuries sustained with the loss of plaintiff's
        parental rights and to associate with his son.

D.  Award punitive damages in the following amounts:

    1.  $ 40,000 dollars against defendant Jos. Scott Shannon.

    2  $ 20,000    dollars against defendants Julie L. Fauconer and Loren R.
       Faulconer.

E.  Grant such other relief as it may appear that plaintiff is entitled.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.


Signed this ___11 TH___ day of ___JULY___ , 2 _005_ .


_____
(Signature of Plaintiff  1)

_____   _____

_____


4

# Certificate of Service

I, _____GREG DENISTON_____, hereby certify that I have served a true

and correct cop(ies) of the attached: _____CIVIL COMPLAINT 42 U.S.C. 1983_____

_____ upon the following

parties/person (s):


TO: _____CLERK OF THE COURT_____          TO: _____

_UNITED STATES DISTRICT COURT_             _____

_FOR THE DISTRICT OF DELAWARE_             _____

_844 KING STREET_                          _____

_LOCKBOX )8 *_                             _____

_WILMINGTON, DELAWARE_
_19801_

TO: _____                      TO: _____

_____                          _____

_____                          _____

_____                          _____

_____                          _____


**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.


On this __11 7H__ day of _____JULY_____, 2005

I/M GREG BENSON
SBI# 168262  UNIT S.1
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

IN THE UNITED STATES
DISTRICT COURT FOR THE
DISTRICT OF DELAWARE
"CLERK OF THE COURT"
844 KING STREET
LOCKBOX 18
WILMINGTON, DELAWARE
19801

"LEGAL M



U.S.M.'s
X-RAY