

# The Family Court of the State of Delaware

NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, STE 9450
WILMINGTON, DELAWARE 19801-3736

VINCENT J. POPPITI
CHIEF JUDGE

February 20, 2003

Children's Home Society of Florida
3535 Lawton Road, Suite 260
Orlando, FL 32803
Phone: 407.895.5805
Fax: 407.895.5801

RE:   Julie Faulconer and Loren Faulconer v. Gregory Denston
       File No.: 02-05-05TN

Dear Sir or Madam:

The Court has been advised the Children's Home Society of Florida has agreed to provide the Social Study and Report in the above-referenced matter. Understanding that this Court has no jurisdiction to compel Children's Home Society of Florida to participate in this case, your assistance and cooperation is greatly appreciated.

To fulfill the requirements of the law of the State of Delaware, Children's Home Society of Florida must perform a Social Study and submit a report to the Court which complies with Del. Code Ann. tit. 13, §§ 912, 1107 (f).

Pursuant to 13 *Del. C.* § 912, the Social Study and report shall include:

(1)   Information regarding the child, its background, its eligibility for adoption;

(2)   Information regarding the adoptive parents and the proposed adoptive home;

(3)   Information regarding the physical and mental condition of the child;

Exh. G

(4)    Information regarding the suitability of the placement;

(5)    A statement as to whether all requirements of this chapter have been complied with;

(6)    A recommendation.

In performing the Social Study and report, the Agency shall consider:

(1)    for the adoptive parents, three (3) written references or telephone notes on such references. At least two (2) of these references shall be persons not related to the adoptive parents by blood or marriage;

(2)    the Agency shall document that the adoptive parents have sufficient income to meet the needs of the family;

(3)    The Agency shall obtain information on the physical and mental health history of the adoptive parents and all other members of the household, including;

(A)    Members of the household must be free of communicable diseases, specific illnesses or disabilities which would either endanger the health of the children or interfere with the capability of the household to provide care for the child;

(B)    the Agency shall obtain a written report from a licensed physician of a current physical examination of the adoptive parents;

(C)    if appropriate, the Agency shall obtain a written report from a licensed physician verifying that other household members are free of communicable diseases, specific illnesses or disabilities which would either endanger the health of the child or interfere with the capability of the household to provide adequate care for the child;

(D)    Disabilities, if any, of adoptive parents or household members are to be considered only as they affect the ability of the household to care for the child;

(4)    The Agency shall conduct at least one (1) home visit and meet with each person who lives in the adoptive home;

(5)    The Agency shall require that a single adoptive parent or an adoptive parent couple who both work outside the home have a plan for caring for children during their absence;

  (6) The Agency shall require that adoptive parents who conduct a business in their home demonstrate that the activities related to this business will not interfere with the care of the children;

  (7) The Agency shall require that the adoptive home is reasonably safe, in good repair, and at least comparable in appearance and maintenance to other family homes in the community;

  (8) The Agency shall require that the home and exterior around the home are free from objects, materials and conditions which constitute a danger to the children served and the home shall be in compliance with state and local standards, ordinances and regulations for residential use.

The Agency shall complete a final written evaluation of the applicant adoptive parents which addresses:

  (1) Motivation for adoption;

  (2) Family's attitude toward accepting the adoptive child, and plan for discussing adoption with the child;

  (3) The attitude of extended family and significant other people involved with the family;

  (4) Attitudes towards relinquishing parents of adoptive children;

  (5) Emotional strengths and weaknesses of applicants, how they see themselves and other members of the family;

  (6) Ability to communicate and solve problems: philosophies on child rearing, discipline, and parental roles; experience with children and ways of coping with problems;

  (7) Marital relationship;

  (8) Family history including descriptions of early home life;

  (9) Information on medical or health conditions which might affect the adoptive parents' ability to care for children;

  (10) Adjustments of children, if any, within the adoptive home;

  (11) Description of the home;

  (12) Experience in coping with special needs, if applicable.

The Agency shall document that a copy of the final written evaluation has been provided to the adoptive parents.

The involvement of the Florida ICPC and Delaware ICPC is not required.

Hearing in this matter is scheduled for April 21, 2003, and the Agency should submit the Social Study and Report to the Court no later than April 14, 2003.

Vincent J. Poppiti, Chief Judge

Feb 22, 2003
Date

cc: Jos. Scott Shannon, Esquire
    Mr. Gregory Denston