IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GREGORY DENSTON,      ) | |
| )| |
| Plaintiff,      ) | |
| ) | |
| v.      ) | Civ. No. 05-492-GMS |
| ) | |
| WILLIAM L. CHAPMAN et al.,      ) | |
| ) | |
| Defendants.      ) | |

## MEMORANDUM

Gregory Denston ("Denston"), a prisoner incarcerated at Delaware Correctional Center, Smyrna, Delaware, brings this lawsuit pursuant to 42 U.S.C. § 1983. He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 4) The court now proceeds to review and screen the complaint pursuant to 42 U.S.C. § 1915 and § 1915A.

For the reasons discussed below, the complaint is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### I. THE COMPLAINT

Plaintiff alleges a violation of his parental rights in the care, custody and management of his child. More particularly, he alleges his parental rights were terminated in violation of his right to due process under the Fourteenth Amendment of the Delaware and United States Constitutions. The named defendants are New Castle County Family Court Judge William L. Chapman, Jr. ("Judge Chapman"); New Castle County Family Court Master Patricia Tate Stewart ("Master Stewart"); Computer Programmer Julie Lorraine Faulconer ("J. Faulconer"); Home Improvement Worker Lorren Riley Faulconer ("L. Faulconer"); Attorney Jos. Scott

Shannon ("Attorney Shannon"); New Castle County Detective Quinnin Watson ("Detective Watson"); Police Officers John Does One, Two, and Three; and, New Castle County Family Court Chief Judge Vincent J. Poppiti ("Judge Poppiti"). Denston seeks injunctive and declaratory relief as well as compensatory damages.

Denston and his former wife Amy, have a son, K.D. Denston alleges the violation of his rights began on November 29, 1997, when he and his wife were involved in an altercation. Following the incident, Denston took K.D. to the home of his paternal grandmother. Later that evening while at his mother's home, Denston was arrested and taken into custody. Denston alleges that he ultimately plead guilty to the charge of abuse[1].

Police Officers John Doe One, Two, and Three left K.D. in the custody of Denston's mother. At the police station, Denston was questioned by Detective Watson and placed under arrest. Denston alleges that he advised Detective Watson that K.D. was at his paternal grandmother's home.

On December 9, 1997, J. Faulconer, K.D.'s maternal aunt, filed a petition with the New Castle County Family Court alleging that K.D. was "dependent or neglected". (D.I. 2, para. 9) J. Faulconer was represented by Attorney Shannon.

An *ex parte* order was entered by Judge Chapman giving J. Faulconer temporary custody of K.D. and removing K.D. from his grandmother's home. On December 12, 1997, Denston attended a probable cause hearing on the matter. Denston alleges that at the hearing, Family

---

[1] A May 5, 2003 order entered by the Family Court of the State of Delaware states that Denston plead guilty to attempted murder in the first degree and possession of a deadly weapon during the commission of a felony. (D.I. 2, Ex. H)

2

Court Master Stewart made no effort to prevent or eliminate the removal of K.D. from his grandmother's home. Neither the paternal grandmother nor Detective Watson were called to testify. Denston alleges that he did not consent to the removal of K.D. from his paternal grandmother's home. Exhibits submitted by Denston indicate that Master Stewart found probable cause that K.D. was in actual physical, mental or emotional danger or there was a substantial imminent risk. Temporary custody of K.D. was granted to J. Faulconer.

Denston alleges that during the hearing he was without counsel to defend against the evidence presented that allegedly showed K.D., while in the custody of his grandmother, to be in imminent danger of serious physical or emotional injury. Following the probable cause hearing, Denston alleges that he learned from his mother that K.D. was "o.k. and in good health".

Master Steward presided over an adjudicatory hearing on the matter on January 9, 1998. Denston alleges that at that time arrangements were made for K.D. to be placed in the Florida home of J. Faulconer and her husband, L. Faulconer. Denston contested, to no avail. He alleges that he was without counsel and that he gave the court notice that he could not afford the presence of counsel at the hearing. Denston alleges that there was no proof at the probable cause hearing that K.D. was in imminent danger. He further alleges that he understood K.D. would be returned to the custody of Amy, K.D.'s mother. Court documents submitted by Denston indicate that J. Faulconer was given custody and guardianship of K.D.

Denston and Amy divorced sometime prior to September 29, 1998. Denston alleges that he wrote to the Faulconers and K.D. expressing his desire to see K.D., but he received no response.

Three and one-half years later, in April 2002, Denston filed a petition for visitation with K.D. Attorney Shannon filed a response to the petition. Denston alleges that he did not receive a hearing on the matter. On April 12, 2002, Amy consented to the termination of her parental rights solely for the purpose of having K.D. adopted by the Faulconers.

On January 14, 2003, Denston received notice from the New Castle County Family Court that a petition for termination of parental rights had been filed and that he had 20 days to file an answer. Denston alleges that he filed a motion for appointment of counsel, but it was denied by the court. Thereafter, the Faulconers filed a petition for adoption/termination of parental rights.

Judge Poppiti requested the State of Florida to prepare a social study and report and to submit it prior to the hearing set in April 2003. Prior to the hearing, J. Faulconer petitioned the family court to exclude K.D. from the adoption/termination of parental rights hearing. In response, Denston asked the court to allow K.D.'s presence during the adoption/termination of parental rights hearing, but his motion was refused. Denston was present at the April 21st hearing. He alleges that he appeared at the hearing without an attorney, and that the court did not appoint him an attorney. The court's order dated May 5, 2003 (D.I. 2, Ex. H) states that Denston appeared *pro se*, and that he provided testimony at the hearing. The court's order also states that Denston opposed the termination of his parental rights and that he requested visitation with K.D. Denston and Amy's parental rights were terminated on May 5, 2003.

**II.  STANDARD OF REVIEW**

When a litigant proceeds *in forma pauperis*, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress in a civil action, 28 U.S.C. § 1915A

4

provides for screening of the complaint by the Court. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996)(citing *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993)). Additionally, *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### III. ANALYSIS

#### A. Judicial and Quasi-Judicial Immunity

Denston's claims against Judges Chapman and Poppiti fail. Judges are absolutely immune from suits for monetary damages and such immunity cannot be overcome by allegations of bad faith or malice. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Furthermore, judicial immunity can only be overcome if the judge has acted outside the scope of his judicial capacity or in the "complete absence of all jurisdiction." *Id.* at 11-12. The complaint contains no allegations that Judges Chapman and Poppiti acted outside the scope of their judicial capacity, or in the absence of their jurisdiction. *Mireles*, 502 U.S. at 11. The most that can be said is that the majority of

motions and/or requests filed by Denston were denied by these judicial officers.

Judges Chapman and Poppiti are immune from suit for monetary liability under 42 U.S.C. § 1983. Accordingly, Denston's claim against them lacks an arguable basis in law or in fact and is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

In like manner, Master Stewart is immune from suit. Even if she is not considered as a judicial official entitled to judicial immunity, at the very least, she is entitled to quasi-judicial absolute immunity.

Court masters, who are appointed by the chief judge of the state court, regulate all proceedings in court hearings before them, and have a large range of duties, many of them identical to judges. *See* Del. Code Ann. tit. 10, § 913 (2006). Quasi-judicial absolute immunity attaches when a public official's role is "functionally comparable" to that of a judge. *Hamilton v. Leavy*, 322 F.3d 776, 785 (3d Cir. 2003) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978); *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986) (state parole board members were "entitled to quasi-judicial immunity when engaged in adjudicatory duties"). Here, there is no question that Master Stewart is entitled to quasi-judicial absolute immunity. She is an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judges Chapman and Poppiti. *See Galis v. Supreme Court of Pennsylvania*, 211 F.3d 760, 772-773 (3d Cir. 2000). Further, like Judges Chapman and Poppiti, there are no allegations that she acted outside the scope of her judicial capacity or in the "complete absence of all jurisdiction". *Mireles v. Waco*, 502 U.S. at 11-12.

Based upon the foregoing analysis, the claim against her is dismissed as frivolous

pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) inasmuch as it lacks an arguable basis in law or in fact.

**B.    State Actors**

Denston brings suit against J. Faulconer and her spouse, L. Faulconer, as well as Attorney Shannon, who represented the Faulconers in the guardianship/custody/adoption proceedings. None of these three defendants are "state actors" under § 1983.

To state a claim under 42 U.S.C. §1983, a plaintiff must allege "the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)) (overruled in part on other grounds *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). To act under "color of state law" a defendant must be "clothed with the authority of state law." *West*, 487 U.S. at 49.  J. Faulconer and L. Faulconer are private individuals who took legal measures to obtain the guardianship, custody and adoption of K.D. Attorney Shannon is merely the lawyer who represented the Faulconers in the legal proceedings. Quite simply, these three defendants are not "clothed with the authority of state law." *See Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d. Cir. 2004).

Therefore, Denston's § 1983 claims against J. Faulconer, L. Faulconer, and Attorney Shannon, have no arguable basis in law or in fact and are dismissed as frivolous pursuant

7

to 28 U.S.C. § 1915(e)(2)(B) and § 1915(A)(b)(1).

### C. Procedural Due Process

Denston alleges that Detective Watson, and John Does One, Two, and Three violated his constitutional rights by failing to make a report to the appropriate authorities knowing that K.D. was in imminent danger of abuse or neglect[2]. He alleges this violated his right to procedural due process under the Fourteenth Amendment. A liberal reading of the complaint indicates, however, that Denston seeks redress for alleged unconstitutional government action against K.D. Indeed, the complaint does not alleges a violation of Denston's right to due process by any of these four defendants.

The Fourteenth Amendment protects individuals from "state deprivations of life, liberty, or property without due process of law." *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1395 (3d Cir. 1991) (quoting *Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984)). Procedural due process analysis involves a two-step process. First, the court must determine whether the plaintiff's asserted interest is "encompassed within the fourteenth amendment's protection of life, liberty, or property." *Id.* Second, "if protected interests are implicated, [the court] must decide what procedures constitute 'due process of law.'" *Id.*

---

[2] Noteworthy, is that the claims against Detective Watson and John Does One, Two, and Three that allegedly occurred on November 29, 1997, are time barred. This complaint was filed on July 14, 2005, over five years after the expiration of the two year limitation period. *See Carr v. Dewey Beach*, 730 F.Supp. 591 (D.Del. 1990). The Third Circuit has not considered whether a district court may *sua sponte* dismiss a § 1983 claim as time-barred under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) where the time-bar is apparent on the face of the complaint, but several federal circuits have permitted *sua sponte* dismissal under these circumstances. *See, e.g., Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995); *Pino v. Ryan*, 49 F.3d 51 (2d Cir. 1995); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993); *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992); *Street v. Vose*, 936 F.2d 38 (1st Cir. 1991).

Denston does not assert any interest with regard to his procedural due process allegations. Rather, he seeks redress for injuries allegedly suffered by K.D.

As Denston readily admits, his parental rights were terminated in 2003. Once the termination order was entered, Denston had no right to redress for alleged injuries to K.D. *See Davis v. Thornburgh*, 903 F.2d 212 (3d. Cir. 1990). Moreover, his displeasure with Detective Watson and the three John Does is insufficient to satisfy the standing requirement that a plaintiff show "injury in fact". *See Valley Forge Christian Coll. v. Americans United*, 454 U.S. 464, 485-87 (1982).

The claims raised against Detective Watson and John Does One, Two, and Three have no arguable basis in law or fact and are dismissed as frivolous.

### D.    Appointment of Counsel

Denston also seeks appointed counsel. (D.I. 3) Plaintiff, as a *pro se* litigant proceeding *in forma pauperis*, has no constitutional or statutory right to appointed counsel. *See Ray Robinson*, 640 F.2d 474, 477 (3d Cir. 1981). It is within this court's discretion, however, to seek representation by counsel for plaintiff. This is done only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984); *accord Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993)(representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

The plaintiff has made no showing of a meritorious claim. For the reasons discussed above, his complaint is frivolous. The motion is therefore denied.

**IV.   CONCLUSION**

For the above stated reasons the court finds that the because the claims against the defendants are factually and legally frivolous, dismissal is appropriate. Additionally, appointed counsel is not warranted. An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

February __1__, 2006
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GREGORY DENSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-492-GMS |
| | ) |
| WILLIAM L. CHAPMAN et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

At Wilmington this 1st day of February, 2006, for the reasons set forth in the Memorandum issued this date;

1. Gregory A. Denston's complaint is dismissed without prejudice as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

2. The motion for appointment of counsel (D.I. 3) is denied.

_____
UNITED STATES DISTRICT JUDGE